UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 2:16-mj-00032-MJD-2 |
| ) | |
| FRANK SHAHADEY, ) | |
| ) | |
| Defendant. ) | |

## ORDER

On November 1, 2016, Defendant Frank Shahadey was charged by Complaint with theft or bribery concerning programs receiving federal funds, in violation of 18 U.S.C. § 666. [Filing No. 1.] At Mr. Shahadey's initial appearance, the Government moved for pretrial detention, and Magistrate Judge Mark Dinsmore set a hearing on the Government's motion. [Filing No. 16.] Magistrate Judge Dinsmore held a detention hearing on November 4, 2016, denied the Government's motion for pretrial detention, and entered an Order Setting Conditions of Release. [*See* Filing No. 19; Filing No. 20.] Presently pending before the Court is the Government's Motion for Revocation of Release Order. [Filing No. 22.]

The Court held a hearing on the Government's motion on November 9, 2016. [Filing No. 33.] The parties did not call any witnesses, but stipulated to proceed by proffer. After considering the evidence in this case and the parties' arguments, the Court **GRANTS** the Government's Motion for Revocation of Release Order, [Filing No. 22], **REVERSES** the Magistrate Judge's decision, and **ORDERS** Mr. Shahadey detained pending further Court order. The following is the Court's rationale for doing so.

# I.
### FINDINGS OF FACT AND CONCLUSIONS OF LAW[1]

18 U.S.C. § 3145(a) provides:

> If a person is ordered released by a magistrate judge, or by a person other than a judge of a court having original jurisdiction over the offense and other than a Federal appellate court- (1) the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release[.] The motion shall be determined promptly.

The district court may review the magistrate judge's findings *de novo*, and may hold a new detention hearing. *United States v. Torres*, 929 F.2d 291, 292 (7th Cir. 1991). The Court notes at the outset that it has listened to the recording of the detention hearing held by the Magistrate Judge and reviewed the evidence introduced, the parties' briefs, and the Complaint. The Court also notes that its findings regarding the weight of the evidence are mandated by 18 U.S.C. § 3142(i), and are made for purposes of this Order only, and not for purposes of proving Mr. Shahadey's guilt at trial.

The Court's inquiry into whether Mr. Shahadey should remain detained prior to trial is guided by the following factors: (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, record concerning appearance at court proceedings, and whether at the time of the instant offense the defendant was subject to court supervision; and (4) the nature and seriousness of the

---

[1] To the extent that any findings of fact should be considered conclusions of law, they should be deemed to be such.

danger to any person in the community. *See* 18 U.S.C. § 3142(g). These factors help the Court determine whether "there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community…." *Id.*

The Government did not argue in support of its motion for pretrial detention that Mr. Shahadey poses a risk of flight, [Filing No. 26 at 2], and did not make that argument in the pending motion. It also did not present evidence regarding any drug or alcohol use by Mr. Shahadey. Accordingly, the Court will consider the remaining § 3142(g) factors to determine whether conditions of release could reasonably ensure the safety of any person and the community. The Government bears the burden of proof and must prove that there is a danger to any other person or to the community by clear and convincing evidence. 18 U.S.C. §3142(f)(2)(B) ("The facts the judicial officer uses to support a finding . . . that no condition or combination of conditions will reasonably assure the safety of any other person and the community shall be supported by clear and convincing evidence").[2]

**Nature and circumstances of the offense.**

Mr. Shahadey was a sworn deputy with the Vigo County Sheriff's Department ("VCSD"), and was assigned to the Vigo County School Corporation ("VCSC") as a School Security Officer until he was placed on administrative leave as a result of his November 2, 2016 arrest.[3] Frank Fennell, Mr. Shahadey's co-defendant, was the Facilities Director for VCSC. Mr. Fennell was responsible for maintenance and servicing of all VCSC facilities, and routinely submitted requisitions to the VCSC Business Office which would then create Purchase Orders that were sent to

---

[2] While "a rebuttable presumption arises that no condition or combination of conditions will reasonably assure the safety of any other person and the community" in connection with the commission of certain types of crimes, the crime Mr. Shahadey is charged with here is not the type for which the rebuttable presumption arises. *See* 18 U.S.C. § 3142(e).

[3] Mr. Shahadey retired from the VCSD after his arrest.

vendors authorizing them to perform work. Once work was completed, the Business Office used VCSC funds to pay the vendors for supplies or services rendered.

Business A, owned by Individual A, is a vendor for VCSC and performs services such as tree trimming and tree and stump removal. In connection with Business A's work for VCSC, Mr. Shahadey and Mr. Fennell demanded kickbacks resulting in at least $80,500 in inflated costs to VCSC. The kickback scheme took place from early 2014 to October 2016, and entailed Individual A – at the direction of Mr. Shahadey and Mr. Fennell – submitting inflated and false estimates and invoices for work at VCSC locations to Mr. Fennell. Mr. Fennell then awarded the work contracts on VCSC's behalf to Business A. When the work was completed, Mr. Fennell submitted the inflated invoices to the VCSC Business Office. The VCSC Business Office then paid Business A with VCSC funds, and Individual A then deposited checks, withdrew cash, and paid cash back to Mr. Shahadey and Mr. Fennell. This occurred with the majority of the 58 jobs that Business A performed for VCSC from early 2014 to October 2016. There were also occasions when Business A did not perform any services, and fake invoices were submitted for payment to VCSC. From January 2014 to June 2016, VCSC paid Business A more than $440,000, and Individual A estimates that only approximately $37,520 related to legitimate contracts that did not involve kickback payments.

On June 8, 2016, the Federal Bureau of Investigation ("FBI") publicly executed search warrants at several VCSC buildings and interviewed Mr. Fennell regarding receiving kickbacks. Even after the FBI raid and interviews, Mr. Shahadey and Mr. Fennell continued to engage in the kickback scheme.

**Weight of the evidence.**

The Court finds, for the purposes of the issue of detention only, that the weight of the evidence against Mr. Shahadey – as discussed above and as found by the Magistrate Judge – is strong.

**History and characteristics**.

As to Mr. Shahadey's history and characteristics, 18 U.S.C. § 3142(g)(3) instructs the Court to consider Mr. Shahadey's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, as well as whether he was subject to any other criminal justice supervision at the time of the charged offense.

The Government presented clear and convincing evidence related to Mr. Shahadey's history and characteristics, which indicates a pattern of dishonesty, deceit and disregard for the law, and thus weighs in favor of detention. This evidence includes the following:

- Mr. Shahadey filed a police report stating that he injured his knee while chasing an individual in the line of duty, but Individual A was with Mr. Shahadey during the incident and stated that Mr. Shahadey complained of his knee injury immediately prior to the incident, and that Individual A – not Mr. Shahadey – was actually the one who chased the individual. Mr. Shahadey has filed a workers' compensation claim, and has relied on the apparently false police report to show that his injury occurred in the line of duty. Mr. Shahadey represented to the Magistrate Judge (by proffer) that the injury occurred in the line of duty when arguing that he should not be detained because he has knee surgery scheduled for later this month;

- When FBI agents executed a search warrant at Mr. Shahadey's residence, they recovered a safe that contained three handguns. The combination for the safe given by Mr. Shahadey was not correct, so the agents used a locksmith to assist in opening the safe. When agents ran the serial numbers of the handguns, they discovered that two of the handguns had been reported stolen by Mr. Shahadey's son, Keaton Shahadey. Keaton Shahadey had filed a police report with the VCSD in August 2016, claiming that he had planned to go hunting, discovered the handguns were missing, and concluded that they were stolen while the family was on vacation in Florida. Instead, the handguns were in the family safe. The Court is

      not persuaded by Mr. Shahadey's argument that he forgot the handguns were in the safe, particularly because his passport was found in the safe as well;

- While Mr. Shahadey claims to be a decorated member of the VCSD, he has actually been disciplined on a number of occasions, and has been the subject of citizen complaints (including a complaint of extortion and a complaint related to a custody dispute). When a VCSD official attempted to locate Mr. Shahadey's personnel file – to which Mr. Shahadey and others had access – it was missing.

- On October 13, 2016, Mr. Shahadey ordered a VCSD dispatcher to run a criminal history for Ernie Thompson, and potential witness in this case that Mr. Shahadey – as discussed further below – had threatened to kill. The dispatcher asked Mr. Shahadey if he was making the request on behalf of the VCSD or on behalf of the VCSC. Mr. Shahadey told the dispatcher several times to mind her own business. The dispatcher told Mr. Shahadey that if the request was not related to VCSD business, then it was a violation of the Indiana Administrative Code for her to run the report. Mr. Shahadey ordered the dispatcher to run the report, to obtain personal identifying information for Mr. Thompson. The dispatcher complied, and Mr. Shahadey told her to "mind your own f**king business." When she responded that it was her business because she had a duty to report code violations, Mr. Shahadey pointed his finger at her and said "I'm not done with this yet." The dispatcher filed a formal complaint for harassment with the VCSD. Her immediate supervisors instructed her to check to see whether Mr. Shahadey had run the criminal histories of any other individuals, and she discovered that Mr. Shahadey had run Individual A's criminal history in 2014.

- Even after the FBI executed a search warrant and questioned Mr. Fennell in June 2016, Mr. Shahadey and Mr. Fennell were not deterred and continued to engage in the kickback scheme.

As for Mr. Shahadey's family ties, the Court finds it significant that Mr. Shahadey's son, Keaton Shahadey, filed the police report regarding the two handguns that were not stolen, but that were in the family safe. Additionally, the Government presented evidence that Keaton Shahadey was belligerent and was ordered to leave the scene when Mr. Shahadey was arrested in this matter, and that Mr. Shahadey's step-son called a task force officer on the scene, with whom the Shahadeys were familiar due to his work with the VCSD, a derogatory name. The Government also presented evidence that during a recorded telephone conversation between Individual A and Mr.

- 6 -

Shahadey in which Mr. Shahadey was bragging about spending the kickback money, Mr. Shahadey's wife is heard in the background saying "more, more." This indicates, at the very least, that she was aware of the kickback scheme.

The Court finds particularly significant to the analysis of Mr. Shahadey's history and characteristics an incident that occurred on November 7, 2016 – after the November 4, 2016 detention hearing before the Magistrate Judge. On that date, a Warrick County reserve officer and known associate of Mr. Shahadey attempted to enter the Henderson County Detention Center in Henderson, Kentucky, where Mr. Shahadey was being held. The individual identified himself as a detective, and attempted to enter the facility outside of normal visiting hours through a restricted entrance that is only accessible by law enforcement officers who are on official business. Law enforcement officers who are not on official business or who are visiting inmates must use a different entrance and must visit during normal visiting hours. When officers at the facility questioned the individual, they discovered that he was attempting to deliver a prepaid calling card to Mr. Shahadey that contained a handwritten note from Mr. Shahadey's family. The United States Marshals Service is continuing to investigate this matter.

As to his physical condition, Mr. Shahadey argues that he needs to use a C-PAP machine while sleeping, and has not been able to use it while detained, and also that he requires physical therapy three times per week for neck and upper back pain. Deputy United States Marshal Andrew Arnold stated at the November 9, 2016 hearing that Mr. Shahadey can be housed in the medical unit at Henderson County Detention Center, where he will be able to use his C-PAP machine. He can also request additional medical services, such as treatment for his neck and back pain.

The evidence presented by the Government demonstrates a pattern of disregard for the law and deceit by Mr. Shahadey. The Court finds this evidence even more disturbing given that Mr.

Shahadey engaged in the conduct discussed above while he was a sworn law enforcement officer. Additionally, the conduct of his family and associates is concerning. Mr. Shahadey's history and characteristics weigh heavily in favor of detention.

**Danger to the community.**

As to the nature and seriousness of the danger to any person in the community, the Government has presented clear and convincing evidence that this factor also weighs in favor of detention. Indeed, this evidence presents a grave concern for the Court. It relates to Mr. Shahadey's interactions with Individual A and Mr. Thompson.

First, the Government has presented clear and convincing evidence that Mr. Shahadey has threatened to harm Individual A. On July 15, 2016 – after the initial FBI raid – Mr. Shahadey and Individual A were discussing the raid in a telephone conversation that law enforcement was surreptitiously recording. Mr. Shahadey asked Individual A whether "somebody's working with somebody," meaning whether someone was cooperating with the FBI. The following exchange took place:

> Mr. Shahadey: You know everybody's a little nervous about what happened the other day, you know, when you met with me.
>
> Ind. A: Yeah, what about it?
>
> Mr. Shahadey: Well, they're thinking something's up. I said absolutely not. Am I correct?
>
> Ind. A: You're correct. What would be up?
>
> Mr. Shahadey: Ok.
>
> Ind. A: What, what what would be up?
>
> Mr. Shahadey: Oh, somebody's working with somebody.
>
> Ind. A: Are you out of your mind?

>Mr. Shahadey: Well, they, you know what I mean. I told em, I think he knows better than that because he knows what would happen. You know what I mean. And he's not that way. But, so. I'm just letting you know. So.
>
>Ind. A: Alright.
>
>Mr. Shahadey: Just be careful what you say and do, you know what I mean. Cause he's uh real scared.
>
>Ind. A: Ok.

Further, on August 23, 2016, during a recorded meeting between Individual A and Mr. Shahadey, Mr. Shahadey told Individual A that Mr. Fennell thought "someone's got to" him, meaning Individual A was cooperating with the FBI. Mr. Shahadey said that he told Mr. Fennell that Individual A "may set you [Mr. Fennell] up, but he [Individual A] knows what I [Mr. Shahadey] would do." Individual A responded, "Yea you would kill me. I already know." Mr. Shahadey did not respond or disagree.

Second, the Government has presented clear and convincing evidence that Mr. Shahadey threatened to kill Mr. Thompson, and also physically intimidated him. On October 4, 2016, during a recorded meeting between Individual A and Mr. Shahadey, Mr. Shahadey discussed wanting to kill Mr. Thompson because Mr. Thompson gave a journal maintained by Mr. Fennell to VCSC Superintendent Danny Tanoos that related to Mr. Fennell's and Mr. Shahadey's criminal activities. The following exchange took place:

>Mr. Shahadey: You know, Frank [Fennel], you know his attorney told him, anybody tries to talk to you about any of this just jot it down.
>
>Ind. A: Right.
>
>      *    *    *
>
>Mr. Shahadey: [H]e did it, you know, just, you know, talking to my attorney, talked to this guy. Ernie Thompson?
>
>Ind. A: Uh huh.

- 9 -

>Mr. Shahadey: He found Frank's book at Sarah Scott [School], laid down, he went through it, read it and took it to Danny.
>
>Ind. A: Uh.
>
>Mr. Shahadey: So guess what? I want him killed, I think I'm about [to] do it.
>
>Ind. A: You're out of your mind.
>
>Mr. Shahadey: Oh No, listen to me, he's crossed the line. Crossed the line.
>
>Ind. A: Uh.

Significantly, as discussed above, Mr. Shahadey ordered the VCSD dispatcher to run Mr. Thompson's criminal history nine days after this conversation. Also on October 4, 2016, Mr. Thompson reported to his superiors at VCSC that Mr. Shahadey had physically threatened him on several occasions, including: (1) on September 30, 2016, when Mr. Shahadey placed his hand on his handgun during a conversation between Mr. Thompson, Mr. Shahadey, and another VCSC employee; and (2) shortly thereafter, when Mr. Thompson encountered Mr. Shahadey in a restroom. Mr. Shahadey, cleared his throat several times so that Mr. Thompson was aware of his presence, and placed his hand on his handgun. The United States Attorney advised the Court that Mr. Thompson fears for his safety and the safety of his family, and has thus far declined to be involved with this matter further.

 The Court is extremely concerned with Mr. Shahadey's threats to harm Individual A and Mr. Thompson. While Mr. Shahadey's counsel argued at the hearing that Mr. Shahadey's threatening comments were "just talk," the Court disagrees. Particularly as to Mr. Thompson, Mr. Shahadey expanded on his statement that he wanted to kill him, explaining that Mr. Thompson had "crossed the line." The Court finds this to be a clear and credible threat, and not harmless banter. Mr. Shahadey's conduct demonstrates that he poses a threat to the community, and specifically to

Individual A and Mr. Thompson, if he is released pending trial.

## II.
### CONCLUSION

In sum, based on the four factors above, the Court finds that the Government has presented clear and convincing evidence that Mr. Shahadey should be detained pending trail. Mr. Shahadey's actions, while he was a sworn law enforcement officer and which continued even after the initial FBI raid, were flagrant and indicate that he believes he can operate outside of the law. Because of this demonstrated belief, the Court has no confidence that Mr. Shahadey would comply with conditions of release. Further, the ties that Mr. Shahadey has with his family and his associates, and their demonstrated willingness to act on his behalf, indicate that home detention (where he would be surrounded by those family members and associates) and GPS monitoring are not sufficient under the circumstances. And most significantly, the Government has established by clear and convincing evidence that there would be a danger to the community if Mr. Shahadey were released pending trial, and that there are no conditions of release that would prevent that danger. Accordingly, the Court **GRANTS** the Government's Motion for Revocation of Release Order, [Filing No. 22], **REVERSES** the decision of the Magistrate Judge, **REVOKES** the grant of pre-trial release, and **ORDERS** that Mr. Shahadey be remanded to the custody of the United States Marshal pending his trial.

The Court further **ORDERS** that Mr. Shahadey: (1) shall be held in a correctional facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal; (2) shall be afforded reasonable opportunity for private consultation with counsel; and (3) shall, on order of the Court or on request of an attorney for the Government, be delivered to the United States Marshal by the correctional facility for appearances in connection with a court proceeding. The Court **RECOMMENDS** that Mr. Shahadey be held in the medical

unit at Henderson County Detention Center, so that he will have access to his C-PAP machine.


Dated: November 10, 2016

*[signature: Jane Magnus-Stinson]*

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**